## MERRILL V. GAMBLE.

1. **Promissory Note:** CONTRACT: CONSTRUCTION OF RAILROAD. G. executed a promissory note to a railway company to aid in the construction of a road between two points named in the note. At the time of its execution it was understood that the note, with others of like purport, if they reached a certain amount, were to be turned over to another company which was to construct the road; they did not reach the amount and the road was constructed by plaintiff who was the assignee of the payee of the note: *Held*, that upon compliance with the other conditions of the note, it was collectible by plaintiff.

2. ——: ——: CORPORATIONS. It being stipulated in the note that the consideration therefor was to be capital stock of the railway company which was to be limited to a certain specified amount, an illegal increase thereof would constitute a valid defense to the note.

*Appeal from Marion Circuit Court.*

FRIDAY, OCTOBER 5.

ACTION at law. A demurrer to the answer of defendant to plaintiff's petition was sustained. Defendant electing to stand upon his answer, judgment was entered against him upon the demurrer. He now appeals to this court.

*D. F. Miller, J. D. Gamble* and *John F. Lacey,* for appellant.

*Stone & Ayres* and *T. J. Anderson,* for appellee.

BECK, J.—As the case was determined in the court below upon the pleadings, it is necessary that their averments be stated with particularity in order to present the questions which we are called upon to decide.

The petition presents the following allegations as grounds of recovery: "That on or about the first day of January, 1875, the Albia, Knoxville & Des Moines Railroad Company was a corporation duly organized under the laws of Iowa with power to construct and operate a railroad from Albia, via. Knoxville, to the city of Des Moines; that on or about March 20th, 1875, for the purpose of aiding in the construction of

said railroad from Albia to Knoxville, the defendant herein, together with many other citizens of the county of Marion, and the State of Iowa, executed and delivered to said company his separate and individual promissory note or contract in writing, whereby he agreed upon certain conditions contained therein to pay said company a sum of money therein named when its said road should be completed to Knoxville aforesaid, and the plaintiff avers that the note or contract executed and delivered by defendant to said company is in the words and figures following to-wit:

"For value received I promise to pay to the Albia, Knoxville & Des Moines Railroad Company, or bearer, the sum of four hundred dollars upon the completion of said railroad, and cars running thereon to the depot at Knoxville, Marion county, Iowa, if done within two years from the 1st day of June, 1875, with interest at the rate of ten per cent per annum from maturity. This note to be due and payable when the cars run to the depot above named, within the time above stipulated, and on such payment the A., K. & D. R. R. Co. agree to issue to the maker of this note a certificate of stock for each one hundred dollars mentioned in this note, but if said road be not completed within the time above named this note to be void, and on demand to be returned to the maker.

"March 20, 1875.                    JOHN GAMBLE."

"Plaintiff further states that on or about the 14th day of May, 1875, the said Albia, Knoxville and Des Moines R. R. Co. entered into a written contract with him, whereby on certain terms and conditions plaintiff undertook and agreed to construct said railroad from Albia to Knoxville on or before the 1st day of January, 1876; that as a part of said contract, and as a part compensation for the construction of said railroad, the said A., K. & D. R. R. Co. turned over and transferred to plaintiff the stock subscription notes or contracts so taken as aforesaid, including the above described note or contract of this defendant.

"And plaintiff further states that he constructed and completed said road and had the cars running to the depot at Knoxville on or about the 12th day of November, A. D.

1875, and that in all respects the terms and conditions of said note or contract on the part of said company, and of the plaintiff as the assignee thereof, have been duly and fully complied with and performed, and he further states that the said note or contract of defendant became due on the said 12th day of November, A. D. 1875, and that no part thereof has been paid.

"Plaintiff further states that at the time said note or contract was executed and delivered by defendant, the articles of incorporation or charter of said A., K. & D. R. R. Co. limited the amount of stock which might be issued by said company to $20,000 per mile for each mile of its said railroad. But plaintiff avers that in accordance with said articles of incorporation the same was so amended, on or before the 14th day of May, 1875, as to permit said company to increase the stock thereof to $40,000 per mile; that the aforesaid change of the articles of incorporation was duly and legally made, and that stock in accordance therewith, as plaintiff believes and avers, has been issued to the stockholders of said company, or may be issued by said company; and plaintiff avers that he is ready and willing to deliver to the defendant the full amount of stock to which he is entitled, or would be entitled upon the payment of said note or contract; that before the commencement of this suit defendant had notice of the completion of said railroad, as hereinbefore set forth, and that payment of said note was duly demanded of him.

"Plaintiff further states that he paid full consideration for the said note or contract, and that he purchased the same in good faith from the said A., K. & D. R. R. Co., and that the full amount thereof is now due him from defendant, with interest thereon at the rate of ten per cent from the 12th day of November, 1875."

Defendant answered the petition at great length, setting up certain matters as a defense to the action which may be briefly stated as follows: The Albia, Knoxville & Des Moines Railroad Company was organized under the laws of this State for the purpose of constructing a railroad from Albia, by the way of Knoxville, to Des Moines. Its incorporation was effected

.by citizens of Knoxville and Marion county. But little stock was subscribed and but a small portion paid up, the object and expectation of the company being to procure the aid of some other railroad corporation or capitalists to invest money in building the railroad. After an effort made by another party to build the road had proved unsuccessful, the company entered into negotiations with the Quincy & St. Paul Railroad Company for the construction of the road, which resulted in a proposition from that corporation alleged to be of a favorable character for the success of the enterprise. The road, if built by the Quincy & St. Paul Railroad Company, would have secured the town of Knoxville a railroad connection with St. Louis. Other matters are shown in the answer which, it is claimed, would have made the road of more advantage to the people of Knoxville than it is with its present connections and management. Among these, it is alleged that stock of the corporation to a less amount would have been issued and the property would not have been so heavily incumbered. In order to accept this proposition it became necessary for the Albia, Knoxville & Des Moines Railroad Company to raise funds to be expended in the enterprise. This was undertaken and notes of the character of the one in suit were executed by individuals interested in the work. Stock of the company to the amount of the notes was, upon their payment, to be issued to the parties executing them. It is alleged that defendant was induced to execute the note in suit upon representations made of the advantages he would reap from the road, the ability of the company to build it, aided by the Quincy & St. Paul Railroad Company, the favorable character of the connections it would have with other roads, etc., etc.

It is shown that the proposition of the Quincy & St. Paul Railroad Company never ripened into a contract between that corporation and the Albia, Knoxville & Des Moines Railroad Company, because the last named corporation was unable to raise notes of the character of the one in suit to a sufficient amount. Subsequently plaintiff entered into a contract with the Albia, Knoxville & Des Moines Railroad company to build its road, and received under the contract the note of defendant

in suit, and others of like character, with full knowledge of the facts charged in the petition.

Two amendments to the answer were filed, one alleging that, under the terms of the proposition made by the Quincy & St. Paul Railroad Company, the notes and subscription raised by the Albia, Knoxville & Des Moines Railroad Company were to be placed in the hands of trustees, subject to the order of the other corporation when it had performed its part of the proposed contract. The Quincy & St. Paul Railroad Company never authorized the transfer of the defendant's note to plaintiff.

The other amendment, so far as it is deemed necessary to notice its averments, is in the following language:

"1. Defendant, for amendment to his answer, states that at the time the note sued on was made the capital stock of said company was limited by the charter to $500,000, which might be increased to $1,000,000 by a majority of the stockholders, and that said stock has never been legally increased by said stockholders, but that the contract under which the plaintiff claims to own the note sued on purported to increase the capital stock to $2,195,000; all of which stock was to be, and was, issued to the plaintiff only, and no provision was made for the issuance of any stock to the defendant, or any of the subscribers thereto, except the said Samuel Merrill; that by the terms of said contract with the said Merrill the said stock was so largely watered or increased as to be wholly valueless; that at the time the note sued on was given the stock of said company was only $20,000 per mile, but that by said contract the amount of stock was so largely increased as to render it of no value whatever; that it is true that plaintiff has tendered defendant twice as much of said worthless stock as defendant had contracted to receive under the contract sued upon; that at the time of the making of the contract sued upon the issuance of stock was one of the considerations for the signing of said note, and that it was then and there agreed that defendant should have one share of stock in said corporation for every $100 subscribed by him in the said note; that it is not true that the stock of said company was increased in any lawful

manner at the time alleged in the petition, or at any time prior
to the making of said contract with said Merrill, but that said
company, at the time said contract was made, was only author-
ized to issue stock to the amount of $500,000, but that, in vio-
lation of the terms of said charter, the said Albia, Knoxville
& Des Moines R. R. Company contracted with the said Mer-
rill to issue to him the said $2,195,000 of stock, and actually
issued the same to him, and by said contract gave to said Mer-
rill the use and control of the corporate seal of said company
and the right to use the same, and the right to use the name
of said company. And the said Merrill thereupon fraudulently
obtained the issuance of said stock to him in fraud of the
rights of this defendant; that said stock has been obtained and
put in circulation, and is beyond the control of said corpora-
tion, and said stock cannot be distinguished from the genuine
and authorized stock of said corporation. And said Merrill,
at the time he made said contract with said corporation, and at
the time that he obtained said stock, well knew that the said
corporation had no lawful right to issue the same, and well
knew that said stock was issued in fraud of the rights of the
stockholders of said company, and particularly of the rights
of this defendant."

I.   In our opinion the demurrer, so far as it assails the
original answer and the amendments first referred to in the
foregoing statement, was correctly sustained by
the court, for these obvious reasons: It is not
shown that the note in suit was executed by de-
fendant to be used only in case the proposition made by the
Quincy & St. Paul Railroad Company ripened into a contract,
or that the Albia, Knoxville & Des Moines Railroad Company
were not fully authorized to regard the note as a valid contract
to be used in building the road without the aid of the other
company. The alleged inducement for executing the note
was to enable the Albia company to enter into the contract;
the consideration was the building of the road and the stock
to be given defendant. The company failed, without blame
on its part, to raise all the notes required by the proposition
of the Quincy company, and the answer shows that was the

1. PROMISSORY
note: con-
tract: con-
struction of
railroad.

Merrill v. Gamble.

reason the contract was not consummated. Without an agreement of the parties on the subject, the Albia company was not required to cancel or return the note. It was the property of the company and could be used for the purpose of building the road. The inducement for its execution, at the time, was to enable the Albia company to carry on the enterprise in a certain manner. Without its fault it failed to accomplish the work in that manner. The work was performed in another manner, and defendant thus received the consideration of his contract. He cannot set up, to defeat the note, a failure of the railroad company to do that which at most was but an inducement for defendant to execute the note at the time.

All the matters alleged in the answer and amended answer now under consideration are unconnected with the conditions of the contract found in the note. The instrument must be interpreted and enforced with reference to its language. We cannot engraft upon it other conditions. Nothing is found in the instrument in regard to the connections of the railroad to be built, the parties who were to build it, the price to be paid for the work or the like. The defendant is, by the terms of the contract, to pay the sum named upon completion of the road within the time stipulated, and is to receive in return stock of the company. Here are the conditions and consideration plainly expressed. We cannot search into the history of the transaction to find other conditions. The instrument speaks its own language and no other.

II. The allegations of the amendment to the answer last referred to and set out above, in our judgment, constitute a defense to the action and the demurrer thereto was erroneously sustained. The consideration for the note sued upon was stock of the railroad to be issued to -defendant. This amendment to the answer shows that the stock has been illegally increased to more than four times the amount the company was authorized to issue when the note was executed and to more than twice the sum it could be authorized to issue by the consent of the majority of stockholders. Stock certificates have been issued and are beyond the control of the corporation, and the illegal stock thus issued

2. ——: ——:
corporations.

cannot be distinguished from the genuine. It is also alleged that the stock by this increase has been made valueless.

Under the contract defendant is entitled to receive legal stock; his answer shows that no such stock has been tendered to him, and that it is not in the power of plaintiffs or the railroad company to deliver upon his contract such stock. Under this state of facts the note must fail, for the consideration which supports it has failed.

This position is not answered by the argument of plaintiff's counsel to the effect that, if there was an illegal over-issue of stock, to that extent it is void, and plaintiff cannot be required to accept such stock. This may be true; but the answer of defendant shows that the stock is beyond the control of the corporation and the illegal and valid stock cannot be distinguished. It is, therefore, not in the power of the railroad company or plaintiff to issue to or deliver to defendant valid stock. It is said, too, that the illegal stock may be defeated, and defendant, therefore, cannot be prejudiced by its existence. But the answer alleges, as we have just said, the true and spurious stock cannot be distinguished. The defendant, therefore, cannot have protection against the stock issued illegally. We will not be expected to support by argument and authorities these conclusions, based, as they are, upon the plainest elementary principles of the law.

It will be observed that the answer alleges that plaintiff was instrumental in causing the illegal over-issue of stock. The note in his hands is subject to the defense based thereon.

It is our opinion that the demurrer as to the amended answer last above referred to ought to have been overruled.

REVERSED.

SEEVERS, J., having been of counsel, took no part in the decision of this case.