## H. D. KAMPMAN V. E. R. TARVER.

### No. 224.

**1. Increase of Stock of Corporation—Statute Construed.**
Construing articles 571, 573, and 576, Revised Statutes, together, it is clear that a corporation can not increase its stock beyond double its authorized capital. Article 571 is limited by articles 576 and 573. Stock issued beyond such amount is void, even when issued under an amendment of the charter under article 571 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 497

**2. Stock Illegally Issued—Liability of Stockholders.**
Such increase of stock being ultra vires, a subscriber can not be required to pay assessments upon it even at the suit of a receiver of the corporation . . . 498

**3. Same—Same—Case in Judgment.**
The capital stock of a corporation was $100,000. By amendment to charter, under article 571 of the Revised Statutes the amount was increased to $1,-200,000. The additional stock was taken up. The corporation becoming insolvent, was placed in the hands of a receiver. The defendant had 700 shares of the new stock, and was sued upon an assessment by the receiver: *Held,* that the invalidity of the stock was a valid defense, and for the en-

tire amount. The courts can not make a new contract so as to allow a recovery for one-eleventh, upon the proportion of possible increase. The good and bad in the contract are blended, and they can not be separated.. 499

4. **Estoppel.**

The defendant sued upon an assessment upon stock so illegally issued would not be estopped from denying the validity of such stock by reason of having by proxy participated in a meeting of the stockholders, at which a large proportion of the indebtedness for which stockholders are sought to be made liable was created ... .... ..................... ....................492, 499

5. **Subscription to Illegal Issue of Stock.**

The practical effect of holding that a contract of subscription to an illegal issue of stock would be binding as between the corporation and its stockholders would be to enable a corporation to override the policy of the law and to increase the stock at will ..................................... 499

6. **Irregularity Contrasted with Want of Power—Estoppel.**

When the corporation has the power to increase its stock, cases may exist in which subscribers to an increase of stock may so act as to estop themselves from denying, as to its creditors, the validity of such increase. This occurs when the power exists, but has been exercised in a manner not authorized by law ................ .....,......................................... 499

7. **Notice of Power of Corporations.**

It seems that parties dealing with a corporation are not bound to take notice of the manner in which it has attempted to exercise its powers. But it is well settled that they must take notice of its powers.................... 499

QUESTIONS CERTIFIED from Court of Civil Appeals for Fourth District, in an appeal from Bexar County.

The questions and statement are here given:

"In the above entitled cause, certain issues of law arise which this court deems it advisable to present to the Supreme Court for adjudication, and have directed to be certified to said court the following questions:

"The Laredo Improvement Company was incorporated under our general act on August 15, 1888, with an authorized capital stock of $100,000, in shares of $10 each, for the purposes of the erection of buildings and the accumulation and loan of funds for the purchase of real property in the city of Laredo, and the construction and maintenance of a street railway in said city.

"On April 1, 1889, the charter was amended by an amended charter filed with the Secretary of State, which declared the capital stock to be $1,200,000, in shares of $10 each. In this amended charter the purposes of the incorporation were declared to be: 1. The erection of buildings, and the accumulation and loan of funds for the purchase of real property in cities, towns, and villages. 2. The construction, maintenance, and operation of street railways in Laredo, Texas, and across the Rio Grande to and through New Laredo, Mexico. 3. The supply of water to the public. 4. The supply of electric light and power to the public. 5. The manufacture of brick and goods, wares,

and merchandise of clay, cement, and concrete.   6. The establishment and maintenance of a hotel.   7. The construction and maintenance of sewers.   8. The accumulation and loan of money without banking and discount privileges.

"None of the new purposes were ever undertaken.   The $100,000 original stock was issued and taken prior to the amendment, and after the amendment stock was taken to the full amount of $1,200,000, inclusive of the $100,000 original stock.

"The Laredo Improvement Company, being insolvent, went into the hands of a receiver in January, 1891, and the suit is by the receiver against a stockholder, who holds 100 shares of the original stock and 700 shares of the remainder of the $1,200,000, to recover an assessment made on the entire stock.

"Question number 1: Was the issue of stock in excess of the $100,000 originally authorized void by reason of the provisions of article 576 of the Revised Statutes, in the sense that a stockholder can not be required to pay assessments based on such excess in a suit brought by the receiver on behalf of creditors?

"Question number 2: If above is answered in the affirmative, would or would not the issue (in excess of $100,000) be valid to the extent of the increase authorized?   In other words:   The corporation, having power to increase its stock $100,000, would not that part or proportion of the new stock be valid in the sense indicated in question number 1?

"Question number 3: Would defendant (holding stock as explained above) be estopped from denying the validity of the stock, by reason of having by proxy participated in a meeting of stockholders at which a large proportion of the indebtedness for which stockholders of this corporation are sought to be made liable, was created?   If this question is to be answered in the affirmative, the other questions are unnecessary.

*Ogden & Harwood, Houston Bros.*, and *James Raley*, for appellants.— 1. The court erred in not holding that the pretended increase of the capital stock of the Laredo Improvement Company from $100,000 to $1,200,000 was illegal and void, and that the issuance of the portion of said illegal and void stock to the defendant conferred upon him no right and imposed upon him no liability; and the court erred in holding that the defendant in this cause was estopped from setting up the invalidity and illegality of the alleged attempt to increase the capital stock of the Laredo Improvement Company.   Const., art. 12, sec. 11; Gen. Laws 14th Leg., pp. 120, 130; Rev. Stats., title 20, chap. 3, arts. 571, 576; Land Co. v. Laigle, 59 Texas, 339; Acts 1893, p. 123; 1 Mora. on Corp., sec. 434; Smith v. Goldworth, 4 Q. B., 430; Railway v. Schuler, 34 N. Y., 30; Sutherland v. Olcutt, 95 N. Y., 93; Dam Co. v. Ropes, 6 Pick., 23; Knowlton v. Congress, etc., 14 Blatch., 364; Ins.

Co. v. Kampner, 73 Ala., 325; Scovill v. Thayer, 105 U. S., 143; 2 Beach on Corp., sec. 468; Cook on Stock., sec. 281.

2. If it is held by this court that this pretended amendment was violative of the provisions of article 576, then question number 2 has an unmistakable answer in the provisions of article 573.

This is equally true if this court should hold that this attempted increase of capital stock to the fictitious sum of $1,200,000 was violative of section 6, article 12, of the Constitution, which declares void all fictitious increase of stock. While it does not appear from the certified questions, it does appear from the findings of the court below, as contained in the brief, that $300,000 of this unlawful increase, being three times the amount which the corporation might lawfully have increased its stock, was, simultaneously with the amendment, declared as a stock dividend, it appearing from the findings of fact that the charter was amended on April 1st, and on April 3rd this stock dividend was declared, in violation of the provisions of the Constitution above referred to.

We submit, therefore, that if this court shall hold that this amendment violated the provisions of article 576 and of article 573, and of the provisions of the Constitution, or any of them, that this court must also hold, in obedience to the express law, that said amendment can have no force or effect whatsoever, and would therefore not be valid to the extent of $100,000 increase or for any other purposes.

It is quite evident that the law proceeds upon the well-known and universally recognized principle that every act of a corporation which violates express law must of necessity be held to be void, and of no force and effect whatsoever for any purposes whatsoever. The corporation owes its existence to the law, and must be held to a strict compliance with all of its express mandates, whatever may be the rule touching the exercise of a power which is not expressly forbidden.

It might also be suggested to the court, that there would be other insurmountable difficulties in addition to the express provisions of the law above stated, in the way of holding this attempted increase of stock valid to the extent of $100,000, and those difficulties would consist of the impossibility of picking out of this mass of void stock the $100,000 good stock. The first difficulty encountered in endeavoring to pick out this $100,000 good stock from $1,000,000 bad stock is, that the first $300,000 of this stock was disposed of as stock dividend, in violation of the Constitution, by which it is denounced as void, and it would therefore be impossible for this court to hold, in the face of the constitutional provisions, that the said $300,000 of fictitious stock declared as stock dividend had any validity whatever for any purpose. It would manifestly be unfair to hold the holders of $100,000 of this stock created by this unlawful amendment liable to the creditors, and

permit the holders of the $1,000,000 of the stock created by the same amendment to escape liability.

It would be and is impossible in the face of the statute and the settled law upon the subject, as announced by the adjudicated cases, to hold each stockholder for a portion of the unpaid amount on the stock held by him, for the reason that the stock created and issued in violation of law can not be held to be valid to any extent for any purpose. It therefore seems quite evident that the vice, if it is a vice, affects each and every share created by this unlawful act alike. We respectfully ask the consideration of appellant's printed brief in connection with the determination of the questions certified, as it contains not only the authorities and arguments which we trust may aid the court in reaching a correct conclusion, but also an accurate statement of the nature of the suit out of which these questions have risen.

*S. G. Newton, Geo. E. Mann*, and *W. Showalter*, for appellees.—1. The limitation contained in article 576, of the Revised Statutes against a corporation increasing its capital stock to more than double its original capital does not inhibit the State from authorizing an amended charter under article 571, with such powers as are germain to the original incorporation, and with such authorized capital as may be necessary to carry out such powers. Rev. Stats., arts. 571, 573, 576; Oil Co. v. Davis, 76 Texas, 633; Wallace v. Stevens, 74 Texas, 559; Duncan, Wyatt & Co. v. Taylor, 63 Texas, 649; McInery v. City of Galveston, 58 Texas, 334; Brown v. Chancellor, 61 Texas, 437; Neill v. Keese, 5 Texas, 31, 33; Steadman v. Bank, 69 Texas, 54.

2. The amended charter of the Laredo Improvement Company, sanctioned by the seal of the State, under article 571 of the Revised Statutes, created a corporation de facto; if not de jure, and a subscriber to stock authorized by such amended charter can not set up the invalidity of the stock issued to him, in accordance with the terms of such amended charter, in a suit between him and the creditors of the corporation. Salt Co. v. Heidenheimer, 80 Texas, 347; Handley v. Stutz, 139 U. S., 426; Railway v. Baptist Church, 137 U. S., 568; Chubb v. Upton, 95 U. S., 665; Casey v. Galli, 94 U. S., 678; Smith v. Sheley, 12 Wall., 358; Zabreskie v. Cleveland, 23 How., 381; Railway v. Alakin, 23 Wall., 233; Taylor on Corp., 730; Mora. on Corp., secs. 743, 759, 762, 763; Cook on Stock., 183, 184; McDonald v. Ins. Co., 5 South. Rep., 133; Bank v. McDonald, 9 South. Rep., 149.

3. Counsel also cited Act of April 26, 1873, amending article 576, Revised Statutes, arguing that this validating act cures the defect in the action of the corporation in increasing its stock.

GAINES, ASSOCIATE JUSTICE.—1. The first question in this case certified for our determination seems to us to resolve itself into two

others: first, was the act of the corporation in attempting to increase its stock by the amount of $1,100,000 ultra vires? and second, if ultra vires, were the subscriptions to such increased stock void even as to the creditors of the corporation?

Whether the attempted increase was ultra vires or not depends upon the construction of the general law in reference to private corporations contained in title 20 of our Revised Statutes. It is contended, upon the one side, that article 576, which authorizes corporations organized under the provisions of that title to increase their capital "in any amount not exceeding double the amount of its authorized capital by a vote of its stockholders," is an absolute limitation upon the power to increase the stock; and on the other, that notwithstanding the article cited, under the power of amendment conferred by article 571, corporations may increase their stock to any amount whatever.

Article 571 reads in part as follows:

"Any private corporation heretofore organized or incorporated, or which may hereafter be organized or incorporated for any of the purposes mentioned in this chapter, may amend or change its charter or act of incorporation by filing, authenticated in the manner required by this chapter as to an original charter of incorporation, such amendments or changes with the Secretary of State," etc.

Article 573 has an important bearing upon the determination of the question. It contains the following provision: "No amendments or changes violative of the Constitution or laws of this State or of any of the provisions of this title, shall be of any force and effect."

The following is the language of article 576:

"Any corporation may increase its capital stock to any amount not exceeding double the amount of its authorized capital, by a vote of the stockholders, in conformity with the by-laws thereof; and if a majority of the stockholders shall vote for the increase of stock the same may be increased by the board of directors, trustees, or other business managers of such corporation; and upon such increase of stock being made in accordance with the by-laws, the date and amount shall be certified to the Secretary of State by the directors or trustees, and from the time such certificate is filed the increase in stock shall become a part of the capital thereof. Such certificate shall be filed and recorded in the same manner as the charter."

The history of this particular legislation throws light upon the construction of these articles. This first general act on the subject of private corporations was passed in 1871. Laws 1871, p. 66. The fact that this act contained no enacting clause probably led to its re-enactment in precisely the same language, with a few changes, by the Legislature which met in 1874. Laws 1874, p. 122. In the Act of 1871 there was no provision for the amendment of the charter; but in that of 1874

substantially the same provisions as are now found in articles 571 and 573 of the Revised Statutes were incorporated as an amendment to section 10 of the original act. Section 12 of the first act authorized corporations chartered under its provisions to increase their capital stock to an amount not exceeding double the amount of their original capital, and this section was retained with the same number in the second act. That section now constitutes article 576 of the Revised Statutes, which has been hereinbefore quoted.

By the well settled rule of construction, articles 571 and 576, if consistent with each other, must both be given effect. The intent of the Legislature which passed the Act of April 23, 1874, that both should stand, is made manifest by the fact that when they inserted the new provision which confers upon corporations the power of amending their charters they retained the section in regard to the increase of the capital stock. The incorporation of both provisions in the Revised Statutes also evinces the same intention. We must hold, therefore, that the special provision in regard to the increase of stock was retained in the law in order to subserve some purpose. If it was intended by article 571 to empower a corporation to increase its capital stock to an unlimited amount, why provide by article 576 a method by which such stock could be increased within a certain limit? If to this it be answered, that the purpose was to provide a simpler mode of increasing the stock than by amendment of the charter, the reply is, that of the two modes, that by amendment is less onerous. Article 571 does not expressly declare that a vote of the stockholders should be necessary in order to amend the charter; and if such vote should be held requisite for that purpose, still it would not be more difficult to increase the stock by amendment under that article than in the manner prescribed in article 576. It is, as we think, clear, therefore, that if article 571 be construed to confer the power in question, such construction, if it did not practically supersede the subsequent provision, would at all events render it nugatory. We are not at liberty to presume that the Legislature contemplated such a result. We apprehend, therefore, that the provision contained in article 576 was retained in the statute for a definite object, and that such object was to place limitations upon the increase of the capital stock of corporations organized under the general law, both as to the amount of the increase and as to the manner in which such increase should be effected. Moreover, the prohibition contained in article 573 resolves any doubt that might otherwise exist as to the determination of this question. The provision, that "no amendment or changes violative of * * * the provisions of this title shall be of any force or effect," clearly shows that it was intended that any amendment in reference to the amount of the capital stock of a corporation should be subordinate to the limitations contained in article 576. The object of the restriction quoted from

article 573 was, in our opinion, to remove any difficulty that might arise by reason of an apparent conflict between the sweeping provisions of article 571 and the limitations contained in the other articles of title 20. We conclude that the attempted increase of stock in question was not authorized by law.

We are also of opinion, that since the increase was ultra vires, a subscriber to such unauthorized stock can not be required to pay assessments upon the stock so subscribed for, even at the suit of a receiver. It was so held in Scovill v. Thayer, 105 United States, 143, in a case in which the precise question was presented. The general incorporation laws of Kansas provide, among other things, that "any incorporation may increase its capital stock to any amount not exceeding double the amount of their authorized capital." This is substantially the same language employed in article 576. In the case cited it was held, that an attempted increase of capital beyond the limit prescribed, by a corporation organized under the laws of that State, was ultra vires and void; and that a subscriber to such increase of stock incurred no liability by reason of his subscription. The court held, that since the stock was void it could confer no right upon the subscriber, and that therefore the contract of subscription was without consideration to support it. In Insurance Company v. Kamper, 73 Alabama, the same doctrine is announced, and the decision is placed upon the same ground. The opinions in these two cases are well considered and elaborate, and are well supported by the numerous authorities therein cited. We think they render any further discussion of the question on our part unnecessary.

2. The second question certified to us is more difficult of determination. In Scovill v. Thayer, supra, there was first an increase to the limit authorized, and then an attempted increase beyond that limit. The validity of a subscription to the unauthorized increase was the matter in controversy in that case, so that the question here presented was not involved. But the contract of appellant in the present case was to pay for a certain number of shares of stock in the corporation, which were a part of an increase to an amount not authorized by the statute. Having been sued upon his subscription, he pleads the illegality of the transaction as a defense to the action. We have seen that his defense, in part at least, is good, upon the ground that the shares to the extent of the unauthorized increase are void, and therefore do not constitute a consideration for the contract. Can we say, that the shares to the extent to which the corporation was empowered to increase its capital are valid, and that he should be held liable to the amount of the subscription for such shares—that is to say, for one-eleventh of his subscription? It seems to us that such a ruling would make a contract for the parties which they have not made for themselves. The appellant subscribed and agreed to pay for 700 shares of

the new stock, and not for $63\frac{7}{11}$ shares.  Suppose a subscriber had agreed to take one share, could he have been forced to accept and pay for one-eleventh of a share?  If the corporation had lawfully provided for an increased issue of shares to the amount of $100,000, and had at the same time directed an additional issue to the amount of $1,000,000, and if appellant had subscribed for both, it may be that he would be bound to pay for the valid shares.  But in this case the good and the bad are blended, and we know of no rule by which they are to be separated.  In Merrill v. Gamble, 46 Iowa, 615, the defendant, having been sued on a note, pleaded that it was given for stock in a railroad corporation to be issued to him upon the payment of the debt; that at the time the note was executed the authorized capital of the company was $500,000, which might be increased to $1,000,000 by a vote of the stockholders; that subsequently the stock was illegally increased to the amount of $2,195,000, and the stock issued; and that the legal shares could not be distinguished from the illegal.  The court held, that because the shares were not distinguishable the defense was good. See also Merrill v. Reaves, 50 Iowa, 404.  We conclude, that the whole issue for increase in stock in this case should be held invalid.

3.  We are also of the opinion that the third question certified for our determination should be answered in the negative.  The practical effect of holding that a contract of subscription to an illegal issue of stock would be binding as between the corporation and its stockholders, would be to enable a corporation to override the policy of the law and to increase its stock at will.  The creditors have the right to look to the stock subscriptions as a fund for the payment of their debts. When the corporation has the power to increase its stock, cases may exist in which subscribers to an increase of stock may so act as to estop themselves from denying, as to creditors, the validity of such increase. This occurs when the power exists, but has been exercised in a manner not authorized by law.  We are not aware that it has ever been held that persons dealing with a corporation are bound to take notice of the manner in which it has attempted to exercise its powers.  But it is well settled that they must take notice of its powers.  Fitzhugh v. Franco-Texan Land Co., 81 Texas, 306, and cases there cited; Scovill v. Thayer, supra; Zabriskie v. Railway, 23 How., 381.  The act of subscribing to additional shares of stock in a corporation which are not authorized by law may be equivalent to an assertion that the proposed issue is legal.  But since a creditor is affected with notice of the powers of the corporation, how can it be said that he has been by such action misled to his prejudice?  In Scovill v. Thayer, supra, Mr. Justice Woods, who delivered the opinion of the court, says:  "The laws secured to the creditors and the public an infallible mode of ascertaining the real capital of the company.  They were bound to know the law permitted no such increase of the capital stock as the company

had attempted to make, and that any representation that it had been made was false." It is accordingly held in that case, that the holders of stock issued ultra vires "are not estopped to set up its invalidity as a defense to an action in the interest of creditors, brought against them to recover the balance unpaid thereon, by the fact that they attended the meeting by which it was voted to issue the same, or that they received and held certificates therefor, or that its agents and officers represented its capital to be equal to the amount of both its authorized and unauthorized stock." (We quote from the headnote by the justice who delivered the opinion.) If the rule announced and acted upon in that case be the law, as we think it is, it follows, that the conduct of appellant in this case did not estop him to deny the invalidity of the increase of stock. Indeed, we fail to see how his participation in the proceedings of the stockholders' meeting at which the debts were created is to be deemed a representation as to the validity of the new issue of stock. Being a holder of 100 of the original shares of the stock of the corporation, his participation as a shareholder was not inconsistent with the theory that the new shares were void.

Delivered February 7, 1895.

Denman, Associate Justice, did not sit in this case.