DAVIS v. ALLISON et al.   (No. 5682.)

(Court of Civil Appeals of Texas. San Antonio. Oct. 26, 1916. On Motion for Additional Conclusions of Fact. Nov. 29, 1916.)

1. CONSTITUTIONAL LAW ⬅129—OBLIGATION OF CONTRACTS—ACCEPTANCE—EVIDENCE.
   In an action to recover stock subscriptions, evidence *held* to support a finding that a special act, approved May 23, 1871 (Sp. Laws 12th Leg. c. 264), providing for the incorporation of a banking association, was not accepted prior to April 18, 1876, and hence did not become a contract prior to the constitutional provision prohibiting the formation of such corporations, which became effective on that date.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 296, 301, 362–413; Dec. Dig. ⬅129.]

2. CONSTITUTIONAL LAW ⬅129—OBLIGATION OF CONTRACTS—UNACCEPTED SPECIAL ACT—REPEAL.
   Where a special act approved May 23, 1871 (Sp. Acts 12th Leg. c. 264), providing for the incorporation of a banking association, was not accepted, it did not become a contract, and vested no rights, and was repealed by Constitution of April 18, 1876, art. 16, § 16, prohibiting the creation of banking corporations.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 296, 301, 362–413; Dec. Dig. ⬅129.]

3. BANKS AND BANKING ⬅39 — CORPORATIONS ⬅34(6)—PROHIBITED CORPORATION—COLLATERAL ATTACK.
   Where a special act approved May 23, 1871, for the incorporation of a banking corporation was repealed and withdrawn by Constitution of 1876, art. 16, § 16, the organization of a pretended banking corporation under this special act, in violation of the clear prohibition of the Constitution, was absolutely void ab initio, did not constitute a de facto corporation, all contracts for subscription are void and contrary to public policy, the notes given for stock are void,

either in law or equity, and the subscribers are not estopped to deny its existence as a corporation, although they are liable to depositors and creditors for amounts actually received by the pretended corporation.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 44–48; Dec. Dig. ⬅39; Corporations, Cent. Dig. §§ 92, 96; Dec. Dig. ⬅34(6).]

4. CORPORATIONS ⬅34(3) — RIGHT OF SUBSCRIBERS TO DENY EXISTENCE—STATUTE.
   Rev. St. 1911, art. 1138, providing that no person who assumes an obligation to an ostensible corporation as such shall resist the enforcement of such obligation on the ground that there was in fact no such corporation until that fact shall have been adjudged in a direct proceeding had for the purpose, does not apply to pretended corporations expressly forbidden by law, but only refers to ostensible de facto or de jure corporations.
   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 84, 86, 90, 91, 96; Dec. Dig. ⬅34(3).]

Appeal from District Court, Travis County; George Calhoun, Judge.

Suit by T. H. Davis, as receiver for the Union Trust Company, against J. H. Allison and others. Judgment for defendants, and plaintiff appeals. Affirmed.

J. B. Robertson, of Austin, for appellant. Charles Rogan, of Austin, Scott & Dodson, of San Antonio, Batts & Brooks, and N. A. Rector, all of Austin, Templeton, Brooks, Napier & Ogden, of San Antonio, and D. H. Doom and White, Cartledge & Graves, all of Austin, for appellees.

SWEARINGEN, J. T. H. Davis, in the capacity of receiver of the Union Trust Company, an alleged insolvent corporation, sued J. H. Allison and many other named defendants to recover sums claimed to be due by defendants to the alleged corporation on unpaid subscriptions and notes given therefor by the several defendants, and alleged that the unpaid debts due creditors exceeded all the assets, including the unpaid subscriptions. The subscriptions and notes given therefor were particularly alleged. The defendants answered substantially that the alleged corporation was one prohibited by the Constitution of the state of Texas, and therefore, the subscriptions and notes were void. The receiver, by supplemental petition, replied:

"That all the persons who extended credit to the Union Trust Company and made deposits therein believed that various persons had subscribed for stock in the Union Trust Company and that such subscriptions had been accepted, and that it was a corporation bearing such name. The pleadings limit the issue to the liability of the defendants on their subscriptions for the capital stock of the alleged corporation and notes given therefor, and do not raise any issue of liability of the defendants on implied contracts with depositors. It is the contract of subscription, and not the implied contract to repay deposits, that is before us. The evidence disclosed that a special act was passed by the Legislature and approved May 23, 1871, as follows:

" 'Chapter CCLXIV.

" 'An act to incorporate the Banking, Insurance and Mutual Aid Association of Texas:

" 'Section 1: Be it enacted by the Legislature of the state of Texas, that James Crutcher, G. R. Freeman, Edwin Rust, C. Spalding, Joseph Harrell, and their associates and successors, are hereby constituted a body corporate, under the name of "the Banking, Insurance and Mutual Aid Association of Texas," and under said name and style shall have succession for ninety-nine years, and a common seal, with capacity to sue and be sued; to do and conduct a general banking and insurance business, under such rules and regulations, as to the management, plan and method of business, as they may prescribe in their by-laws, including the right to make contracts, loan at interest, borrow, discount, take on deposit, buy or sell exchange, bank stocks and other securities, take pledges, and dispose of the same, make investments in any kind of property, real, personal or mixed, insure property against loss or destruction by fire, water or other casualties, provide for mutual aid and life insurance between its members, and such others as it may allow to participate in its benefits, either partially or otherwise; to enact by-laws for the government of the association, and regulation and management of its business, and generally to do any and every lawful thing needful to successfully conduct a general banking and insurance business, on such plan as may be determined in their by-laws.

" 'Sec. 2. The capital stock of the association shall be two hundred thousand dollars, divided into shares of one hundred dollars each, to be increased at the option of the association to five hundred thousand dollars; and as soon as ten thousand dollars shall be subscribed, and ten per cent. thereof paid to the aforesaid corporators, the association shall be deemed organized, and the said corporators, or a majority of them, shall be and are hereby authorized and required to call a meeting of all the subscribers for the enactment of by-laws, and the election or appointment of such officers as they may determine in their by-laws to have, including a president, secretary and treasurer.

" 'Sec. 3. The said association shall have their principal office at the city of Austin, with the privilege of establishing branch offices in other towns and cities in the state, and shall have the power to increase their capital stock one hundred thousand dollars for each branch they may establish.

" 'Sec. 4. That whenever any member of said association, or his successor or legal representative, or any one entitled to participate in its benefits, shall fail from any cause to pay, at the time the same becomes due, any sum or sums of money required of him or her by the by-laws of the association, the association may, after thirty days' public notice, sell and transfer to the highest bidder all the interests of such person in the association or its property, and after paying all expenses attending the notice and sale, and all dues of such person to the association, they shall pay the residue, if any, to the delinquent who, however, shall be released from only so much of his or her indebtedness as said proceeds are sufficient to meet after paying the said expenses.

" 'Sec. 5. The receipt of a minor or married woman, making a deposit in a bank of said association, shall be deemed a legal acquittance of all liability by the association for the same.

" 'Sec. 6. Nothing in this [charter] shall be construed to give authority to issue bills or notes to pass as money.

" 'Sec. 7. That this act take effect from and after its passage.' Approved May 23, 1871."

The evidence further shows the facts:

That prior to April 18, 1876, when the Constitution prohibiting the creation of banking corporations became effective, the corporators had not organized the corporation under color of the special act; had not accepted the offer from the state as contained in the special act; had not attempted to do or conduct any business; had not adopted a common seal; had made no rules or regulations as to plan or management of business; had enacted no by-laws; had no capital stock; had no subscription for any capital stock; had not received subscriptions for any part of ten thousand dollars of the capital stock; had not received one thousand dollars cash as part payment of the required subscription of ten thousand dollars; had called no meeting of subscribers for enactment of by-laws and the election of officers.

[1-3] Prior to the adoption of the Constitution, April 18, 1876, there was no acceptance by corporators or subscribers of the offer contained in the special act of 1871, and there was no organization, or attempted organization, of a corporation thereunder. The special act did not become a contract, and vested no rights in any one.

We find that any and all rights offered by the special act had been abandoned by the corporators, had been withdrawn by the state, and the act was repealed by article 16, § 16, of the Constitution on April 18, 1876. The jury found as a fact that the special act had not been accepted prior to April 18, 1876, and there is evidence to support that finding.

The evidence further shows that on May 18, 1904, an attempt was made to accept the offer of the special act, and under color of this repealed act to organize a banking corporation. This attempt was made by parties who claimed to have purchased in 1903 the franchise of becoming and being a corporation. Such a franchise is incapable of being sold. Memphis v. Ry. Com'rs, 112 U. S. 609, 5 Sup. Ct. 299, 28 L. Ed. 831; 7 R. C. L. 93, § 70. Subsequently the defendants, appellees, subscribed for portions of the capital stock of this pretended corporation. The subscriptions of some of the defendants were not accepted. The pretended corporation became insolvent, being indebted to depositing creditors in excess of all assets, including the unpaid subscriptions. T. H. Davis was appointed receiver of the pretended corporation.

Our conclusion is that the special act of 1871 was repealed by article 16, § 16, of the state Constitution, effective April 18, 1876, which is in the following words:

"No corporate bodies shall hereafter be created, renewed or extended with banking or discounting privileges." Quinlan v. H. & T. C. Ry., 89 Tex. 356, 34 S. W. 738.

This provision of the Constitution continued to be the law of the land until its amendment December 29, 1904. The amendment of December 29, 1904, required banking corporations to be organized under a general law to be passed by the Legislature, requiring all capital stock subscribed and paid in full in cash before organization. Pursuant

to this amendment the Legislature did pass a banking law in 1905. The organization of the pretended corporation in May, 1904, was contrary to and violated the clear prohibition of the Constitution, and was absolutely void ab initio. 1 Clark & Marshall, 246, note 156. As expressed by the United States Supreme Court:

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby County, 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 186; Hildreth v. McIntire, 1 J. J. Marsh. (Ky.) 206, 19 Am. Dec. 61.

As the pretended corporation, the Union Trust Company, was prohibited by law and is void, all contracts for subscription to the capital stock are void, and the notes given for the stock subscribed for are void. Neither law nor equity can give validity to these void contracts, and no recovery can be had thereon. Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968; Kampman v. Tarver, 87 Tex. 491, 29 S. W. 768. Contracts for creation of a corporation prohibited by law are against public policy. 12 L. R. A. 577, note 2.

The liability of subscribers to capital stock of corporations for unpaid subscriptions when the corporations are insolvent has been discussed in a great many decisions, and the very elaborate brief of appellant indicates some confusion therefrom. We believe there is practical harmony in all of them. The apparent conflict, we think, will disappear when it is borne in mind that they treat of stockholders in different kinds of organizations claiming to be corporations. Generally speaking, there seem to be four classes of such organizations, each class being governed by distinct principles of law: First. The corporation de jure. Second. The de facto corporation. Third. The organization pretending to be a corporation, where no attempt was made to incorporate, but which is not prohibited by law. R. C. L. § 49, note 9; Clark v. American Cannel Coal Co., 165 Ind. 213, 73 N. E. 1083, 112 Am. St. Rep. 217. Fourth. The pretended corporation, that is expressly forbidden by law—the prohibited corporation.

For stock in the de jure and de facto corporations, unpaid subscriptions are valid contracts. The subscribers are estopped to question the regularity of the corporation, and cannot be heard to plead fraud in the procuring of their subscriptions. Neither can the stockholders be held liable as partners or held individually for any debts of the corporation. The exceptions to this last statement need not be discussed here.

The subscribers to the third class of organization, or association, are held to be partners, liable for all the debts of the association, unlimited by any agreement among themselves. They can deny the existence of the corporation, and those contracting with such an organization can deny the existence of a corporation.

The subscribers to the fourth class, the prohibited corporation, can deny its existence as a corporation. The subscription contracts and notes given therefor are absolutely void, and courts will not enforce such contracts. We do not mean to say that the members of a prohibited corporation do not owe to depositors or creditors all the money or property received by their organization. On the contrary, they owe it morally and legally, and ought to be made to pay, all indebtedness to the lawful owners. The contracts for such debts are valid and enforceable. But the contracts for subscriptions to the capital stock of a prohibited corporation are void. The Union Trust Company, of which appellant Davis is receiver, is a prohibited corporation.

The distinction between the rules of law to be applied to acts expressly forbidden by law, which are the rules to apply to organizations falling within class 4, and the rules applicable to acts authorized by law, and undertaken to be performed in compliance therewith, but irregularly performed, which are the rules to apply to de facto corporations, is illustrated by two cases decided by the Supreme Court of the United States, viz.: Chubb v. Upton, 95 U. S. 665, 24 L. Ed. 523, and Scovill v. Thayer. In the case of Chubb v. Upton, Assignee, there was an irregular increase of the capital stock of the corporation, but the increase was not prohibited by law. The court held that the unpaid subscription for a portion of the increase was collectible by the assignee for the creditors of the insolvent corporation, and that the irregularity of the increase could not be urged by the subscriber as a defense. Chubb v. Upton, 95 U. S. 665, 24 L. Ed. 523. In the case of Scovill v. Thayer, also by the U. S. Supreme Court, Scovill, as assignee of an insolvent corporation, sued Thayer for the balance on his unpaid subscription to an increase of the capital stock of the corporation. The increase was greater than double the authorized capital stock. The statute under which the corporation was formed limited the increase to double, in these words:

"Any incorporation may increase its capital stock to any amount not exceeding double the amount of the authorized capital."

Thayer answered that the increase was contrary to law. The Supreme Court held that Thayer was not estopped to make such defense, and sustained it, holding that as the increase was prohibited by law, the stock was void. It conferred on the subscriber no rights, and subjected him to no liability. The court, distinguishing the Scovill-Thayer Case from the Chubb-Upton Case, uses the following language:

"We think the defendant in error is not estopped to set up the nullity of the unauthorized stock. It is true that it has been held by this

court that a stockholder cannot set up informalities in the issue of stock which the corporation had the power to create. Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203; Chubb v. Upton, 95 U. S. 665, 24 L. Ed. 523; Pullman v. Upton, 96 U. S. 328, 24 L. Ed. 818. But those were cases where the increase of the stock was authorized by law. The increase itself was legal and within the power of the corporation, but there were simply informalities in the steps taken to effect the increase. These, it was held, were cured by the acts and acquiescence of the defendant. But here, the corporation being absolutely without power to increase its stock above a certain limit, no acquiescence of the shareholder can give it validity or bind him or the corporation. 'A distinction must be made between shares which the company had no power to issue and shares which the company had power to issue, although not in the manner in which, or upon the terms upon which, they have been issued. The holders of shares which the company has no power to issue in truth had nothing at all, and are not contributors.' 2 Lindley, pt. 138; and see Lathrop v. Kneeland, 46 Barb. (N. Y.) 432; Mackley's Case, L. R., 1 Ch. D. 247."

The issue of stock in the Chubb Case was not prohibited by law, and was a valid obligation, although irregular. Whereas, in the Thayer Case, the issue of stock was prohibited by law and void, upon which no liability could be enforced. This same distinction is expressly recognized and declared to be the law in Texas by the Supreme Court of Texas, in the opinion by Chief Justice Gaines in Kampman v. Tarver, 87 Tex. 491, 29 S. W. 768.

The special act claimed as a charter for the Union Trust Company ceased to exist April 18, 1876. On May 18, 1904, the corporators could not have organized the Union Trust Company as a de facto corporation, because such a corporation as was attempted was prohibited by the Constitution. Const. art. 16, § 16. The law is sufficiently expressed in Jones v. Aspen Hardware Co., 21 Colo. 263, 40 Pac. 457, 29 L. R. A. 143, 52 Am. St. Rep. 220:

"It is also well settled that to constitute a de facto corporation there must be either a charter or a law authorizing the creation of such a corporation, with an attempt in good faith to comply with its terms, and also a user or attempt to exercise corporate powers under it. Duggan v. Colorado Mortg. & Investment Co., 11 Colo. 113 [17 Pac. 105]; Bates v. Wilson, 14 Colo. 140 [24 Pac. 99]. A de facto corporation can never be recognized in violation of a positive law. This principle, which seems to be supported by all the authorities, is thus stated by Morawetz on Private Corporations, § 758: 'If the formation of a corporate association is not only prohibited by this general rule of the common law, but is also in violation of some principle of morality or public policy, or a positive statutory prohibition, the parties forming such association will not be legally bound by their agreement of membership, and the courts will not recognize the association, either as among its members or against third parties.' "

The contract of the subscriber to purchase and pay for capital stock in a pretended corporation prohibited by the Constitution is absolutely void ab initio, and is contrary to public policy. Neither a court of law nor of equity will give force and effect to such contracts. 12 L. R. A. 577, note 2.

The conclusion reached by us in this case is not in conflict with the opinions in the cases of Burleson v. Davis, 141 S. W. 559, and Davis v. Burns, 173 S. W. 476, for in those cases no attack was made upon the legality of the pretended corporation, known as the Union Trust Company, on the ground that the offer granted by act of the Legislature had not been accepted and organization perfected prior to the adoption of the Constitution of 1876. The same fact was found by Judge Meek, as expressed in his opinion in the case of In re Western Bank & Trust Co. (D. C.) 163 Fed. 713. This case involved the same kind of a special act of the Texas Legislature as the one used for Union Trust Company, and was passed about the same time. In none of the three cases mentioned was the acceptance of the acts and organization thereunder contested. The finding that the charter was accepted and the corporation organized prior to the adoption of the Constitution prohibiting such corporation distinguishes those three cases mentioned from the one at bar.

To repeat: Our conclusion is that the special act of 1871 was not accepted and no organization effected prior to April 18, 1876; that the offer contained in that special act was withdrawn and the act repealed April 18, 1876, when article 16, § 16, of the Texas Constitution became effective; that from April 18, 1876, until December 29, 1904, such a corporation as the Union Trust Company pretended to be was expressly prohibited by article 16, § 16, of the Constitution; that contracts for stock in such a prohibited corporation were contrary to public policy, because contrary to law and were void. In the suit at bar recovery is sought only on the void contracts for purchase of stock, which recovery was correctly denied.

Considering specially appellant's assignments, we find those numbered from 1 to 71, inclusive, are precisely the same, except each contains the name of a different defendant.

The seventy-first assignment is submitted as a proposition, followed by 11 additional propositions. The contention urged therein is, substantially, that the court erred in not rendering judgment against subscribers on their subscription contracts, inasmuch as the corporation was either a de jure or de facto corporation, the subscription contracts valid, and the defendant subscribers were estopped to deny the validity of the contracts.

The jury found that the special act or charter was not accepted prior to 1876, and there is evidence to support that finding. The charter not having been accepted prior to the adoption of the Constitution, April 18, 1876, was repealed by the Constitution, and the pretended organization was prohibited by law. The subscribers were not estopped

to deny its incorporation, nor to deny liability upon their void subscription contracts.

[4] Article 1138, Revised Statutes of 1911, does not apply to pretended corporations expressly forbidden by law, but only refers to ostensible or de facto or de jure corporations.

The authorities cited by appellant do not announce any doctrine contrary to our conclusions in the case at bar, and we do not deem it necessary to review them in this opinion. As an illustration that they do not apply to the facts of the instant case, we call attention to the case of McCarthy v. Lavasche, 89 Ill. 271, 31 Am. Rep. 83, quoted twice in appellant's brief. That was a suit by a creditor against one of the stockholders to enforce the implied contract to repay the money deposited. That contract is not void, and the stockholder was legally and morally bound to repay that money. The present suit is not to enforce the depositors' contracts, but to enforce the void contracts for capital stock in a prohibited corporation.

The first 71 assignments are overruled.

The assignments 72 to 82 complain of error resulting from submitting the fourth and fifth special issues to the jury. The fourth and fifth questions and answers were:

"Question 4. Did the Union Trust Company, by any means, acquire the reputation of doing business on any fixed amount of capital stock between July 13, 1909, and January 10, 1910?

"Question 5. If you answer 'Yes,' to question 4, then state what was the highest amount of said capital stock said company was reputed to have between said dates?

"Answer to question No. 4, Yes."

"Answer to question No. 5, $200,000."

In view of the answer of the jury that the charter had not been accepted prior to the adoption of the Constitution of 1876, and the disposition to be made of the suit thereupon, questions 4 and 5 were entirely immaterial, and the assignments based thereon are accordingly overruled.

Assignments eighty-third to the ninety-eighth, inclusive, complain that the trial court erred in refusing to instruct the jury to find for appellant, plaintiff, and in refusing to render judgment for appellant, plaintiff, non obstante veredicto. The reasons urged are that the undisputed evidence showed that the charter under which the Union Trust Company was organized had been accepted prior to 1876, and that a de jure or a de facto corporation had been brought into existence and was in good faith operated. There was evidence to support the finding of the jury that the charter had not been accepted prior to the adoption of the provision of the Constitution prohibiting such corporations, as there were no vested rights at the time the Constitution repealed the special act. Hence these assignments are overruled.

Assignments 99 to 161, inclusive, present similar questions raised in the previous bunch of assignments numbered 72 to 98, and for similar reasons are overruled.

The errors complained of in assignments 162 and 163, if errors, are immaterial in view of our opinion of this case.

Assignments 174 to 177, inclusive, further than specializing errors in favor of defendant Burd, present no other errors than those presented in assignments 99 to 161, and are overruled for the same reasons by which they were overruled, and for the same reasons assignments 178 and 179 are overruled.

None of the other assignments, numbered from 180 to 208, present errors that are material, if errors at all, and are accordingly overruled.

Again we say the subscription contracts sued upon in the case at bar were absolutely void, and cannot be made valid by estoppel or in any other way.

A prohibited charter can be attacked collaterally. The charter herein involved was a prohibited one. The pretended corporation was malum prohibitum. The subscription contracts, being void, cannot be enforced. If the members of the prohibited corporation received money from depositors, they must return it to the true owners. But questions of that nature do not arise in this case. Here it is simply a question as to the validity of the stock subscriptions in suit, and, as that cannot be sustained, the judgment of the trial court must be affirmed. Norton v. Shelby County, 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 190.

Affirmed.

### On Motion for Additional Conclusions of Fact.

Appellee J. G. Burney's motion for additional conclusions of fact is granted.

The seventh special issue submitted to the jury was:

"Question 7. Was the subscription of J. G. Burney for 400 shares of stock, dated September 30, 1909, ever accepted by the Union Trust Company?

—to which question the jury answered, "No."

There was sufficient evidence to sustain the finding of the jury upon that issue.