## LEWIS AUDENRIED & others *vs.* ALBERT BETTELEY & others.

An assignment under the insolvent laws does not vest in the assignees property which has been put into the hands of the debtor for the fraudulent purpose of giving him a false credit, although some of his creditors may have been defrauded thereby.

BILL IN EQUITY against Artemas Hammond, an insolvent debtor, and his assignees in insolvency, alleging, amongst other things, that said Hammond entered into a written agreement to sell coal, wood and bark for the plaintiffs, and that, at the time of his insolvency, he had sold large quantities of the same for them, payment for which had been made to the other defendants, as his assignees; and praying for a decree ordering the defendants to account for and pay over the sums collected by them, and to deliver the books of Hammond to the plaintiffs, to enable them to collect such of the debts as are still outstanding.

To this bill the assignees filed an answer, and then applied to the court to have the following issues tried by a jury :

" *First.* Whether, subsequently to the written contract entered into between the plaintiffs and Artemas Hammond, a copy of which is annexed to the bill, the said parties made a verbal agreement, whereby the coal and wood, which said Hammond required for his retail sales, were and did become his sole property, at certain agreed upon prices, anything in said written contract to the contrary notwithstanding ; and whereby said Hammond became and was the purchaser and owner, at certain agreed upon prices, of the wood and coal which he sold at retail ; and whereby the said Hammond was not to account to said plaintiffs as their agent for coal and wood sold at retail, but was to take what was necessary for his retail trade, and pay for it at a certain fixed price.

" *Secondly.* Whether the contract made between the plaintiffs and Artemas Hammond, a copy of which is annexed to the bill, was made with the object and intention of the parties to said contract, by their dealings under it, to enable the said Hammond to obtain a false credit to carry on business, buy merchandise, and borrow money and notes upon the strength of the possession of property which apparently belonged to him, but which really was owned by said plaintiffs, by virtue of said contract."

Upon this application, *Hoar*, J. refused to allow the second issue to be submitted to the jury ; and thereupon the parties agreed to waive a trial by jury on the first issue, and that the cause be reported to the full court upon said refusal to allow said second issue to be submitted to the jury ; and that, if the court should be of opinion that such refusal was erroneous, the cause should be sent to a jury upon the issue of fraud, and also upon said issue agreed to be waived as aforesaid ; but, if said ruling should be sustained, then the cause should be sent to a master, to find and report the facts in relation to the alleged subsequent parol agreement, and to state and report an account between the parties, in conformity with the prayer of the bill ; and the court to render such judgment thereon as the law requires.

The above agreement having been entered into and filed by the parties, it was ordered that the cause be reported to the full court, to be disposed of in pursuance of said agreement.

*S. Bartlett & D. Thaxter*, for the plaintiffs.

*J. G. Abbott & G. A. Somerby*, for the defendants. It is plain that any creditor of Hammond who had been defrauded in consequence of the acts of the plaintiffs, and had parted with his property by reason thereof, might have sued Hammond and seized the property intrusted to him by the plaintiffs on his writ or execution. The doctrine of estoppel would be precisely applicable to such a case. The plaintiffs could not be allowed to set up their title to the property, against such a creditor. It is, therefore, immaterial whether the title passed to Hammond or not. But if, at the time of the first publication of notice, a creditor of Hammond might have attached the property, the same principle which would protect the rights of creditors extends to the assignees, as the representatives of the creditors. The whole policy of the insolvent laws is that assignees should have all the rights that any creditor could have; and the very terms of the statute vest the property in them. Gen. Sts. *c.* 118, § 44. There may be cases where a conveyance is void as to one creditor, and not as to others. If, for example, a conveyance is merely voluntary, only a precedent creditor can set it aside. But in such a case, the assignees succeed to the rights of such a creditor. And the same rule should be applied here.

The property and its proceeds were in the possession of Hammond, as his own. The plaintiffs endeavor to establish their title to it under a contract. The reply to this is, that the contract was fraudulent, and cannot be set up for that purpose.

HOAR, J. It was said by Lord Denman, in *Pickard* v. *Sears*, 6 Ad. & El. 474, that "the rule of law is clear, that, where one by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." This was said in a suit where the plaintiff, a mortgagee of personal property, had

allowed it to be seized and sold by a sheriff for a debt of the mortgagor, and purchased by the defendants, without making any claim or disclosure of his title ; and had so conducted in negotiations with the defendants as to lead them to the belief that the property was the debtor's. The court held that the evidence might authorize a jury to find that he concurred in the sale.

The doctrine of *Pickard* v. *Sears* was recognized by Baron Parke in *Freeman* v. *Cooke*, 2 Exch. 663, " as established," and the rule fully explained and illustrated. It is there said that " in most cases to which the doctrine in *Pickard* v. *Sears* is to be applied, the representation is such as to amount to the contract or license of the party making it." p. 664. That case was by the assignees of a bankrupt against a sheriff, for taking property of the bankrupt as the property of a third person. The bankrupt had represented the property to belong to the third person, in order to prevent it from being seized as his own ; but had not intended to have it taken as the property of the other ; and when he found that the officers had a writ against the other, retracted his statement. It was held that the plaintiffs were not estopped from maintaining the action.

The doctrine has been reaffirmed and fully approved in *Howard* v. *Hudson*, 2 El. & Bl. 1, and has been repeatedly sanctioned in this commonwealth. *Dewey* v. *Field*, 4 Met. 381. *Coggill* v. *Hartford, &c. Railroad*, 3 Gray, 549, by *Bigelow*, J., *arguendo*. *Osgood* v. *Nichols*, 5 Gray, 420.

It may therefore be conceded, if the plaintiffs put their property into the possession of Hammond, with the fraudulent purpose of giving him a false credit, that any creditor of Hammond, who was induced to give him credit by reason of his apparent ownership of that property, might have attached it as the property of Hammond, and the plaintiffs would not have been permitted to set up their title against such an attachment.

The defendants then contend, as this property might have been taken on execution by any creditor of Hammond who had been induced by the fraudulent acts of the plaintiffs to give him credit, that by the express terms of the insolvent law

it passes by the assignment of his estate in insolvency. The language of the statute is, that " the assignment shall vest in the assignee all the property of the debtor, real and personal, which he could have lawfully sold, assigned or conveyed, or which might have been taken on execution upon a judgment against him at the time of the first publication," &c. Gen. Sts. c. 118, § 44.

The material question then is, whether this property can be regarded as " the property of the debtor " Hammond, " which might have been taken on execution upon a judgment against him " within the meaning of the law. We are of opinion that it cannot.

Under the English bankrupt law, this case is provided for by express legislation. *Sts.* 21 James I. *c.* 19, § 11; 13 Eliz. *c.* 5; 27 Eliz. *c.* 4. But these statutory provisions tend to show that the common law was otherwise, and they have never been incorporated into our insolvent system.

An estoppel *in pais*, on the ground of fraud, is personal to the particular creditor defrauded, and does not pass the property so as to enure to the benefit of creditors generally. As was said by Mr. Justice Curtis, in *Hawes* v. *Marchant,* 1 Curtis C. C. 144, " to constitute such an estoppel, a party must have designedly made an admission inconsistent with the defence or claim which he proposes to set up, and another party have, with his knowledge and consent, so acted on that admission that he will be injured by allowing the admission to be disproved; and this injury must be co-extensive with the estoppel."

The analogy has been strongly pressed upon us in argument, of a conveyance of property by a debtor in fraud of creditors. The debtor could not himself afterward convey it, but creditors might take it on execution. This would pass to the assignees for the general benefit of creditors. *Grant* v. *Lyman,* 4 Met. 473. And it was decided in *Norton* v. *Norton,* 5 Cush. 524, that where an administrator had a license to sell the real estate of his intestate, including " all that the deceased may have conveyed with intent to defraud his creditors," the estate thus sold becomes general assets, to be distributed among all the creditors

*pro rata*, although the conveyance may have been fraudulent only against existing creditors at the time it was made, and not as against subsequent creditors. But the defect in this analogy is, that the property which a debtor attempts to convey in fraud of creditors has once been his. When the conveyance is avoided by a creditor, or by one succeeding to the rights of a creditor, in the mode prescribed by law, it is the property of the debtor which is to be dealt with. The assignee takes it as property which in contemplation of law has remained the debtor's property. But in the case at bar, the property never was the property of Hammond. If it had been sold by the plaintiffs before it had been taken by legal process on behalf of any creditor actually defrauded, a good title would have passed. If the plaintiffs had become insolvent, it would have passed to their assignees.

The mere right to take property on execution by virtue of a lien acquired by attachment on mesne process does not pass to the assignee. Under the *St.* of 1838, if a creditor had attached property which after his attachment had been conveyed to a third person, the assignment in insolvency dissolved his attachment, although the effect was to perfect the title of the grantee, and not to convey the property to the assignee. *Grant* v. *Lyman, ubi supra. Shelton* v. *Codman,* 3 Cush. 318. The supplementary act of 1841, *c.* 124, § 5, was passed to furnish a remedy against this result, by providing that the attachment might survive in such a case, and the suit be prosecuted by the assignee to secure the property attached for the benefit of the estate. But this act would have been unnecessary if by *St.* 1838, *c.* 163, § 5, the property attached would have passed to the assignee upon the dissolution of the attachment. Yet it was property that the particular creditor who had attached it had a right to take on execution at the time of the first publication; but it was not then the property of his debtor.

The effect of an estoppel which existed as to rights of property between the debtor and third persons would pass to an assignee; but we do not think the insolvent law intended to pass rights by estoppel between the creditor and third persons. Each creditor who was actually defrauded may still have his

action against the plaintiffs. But this right of action, which is special and individual, is not transferred to the assignee of the debtor in insolvency; and the right to treat the property which was fraudulently represented as the property of the debtor as if it were really his property, seems to us equally the personal right of the creditor who was defrauded, and not transferable by the assignment for the benefit of creditors generally.

The second issue tendered by the defendants was therefore immaterial, and the refusal to submit it to the jury must be sustained.