17131, 17132. PARKS *v.* WASHINGTON & LINCOLNTON RAILROAD COMPANY; and *vice versa.*

1. Among the essentials of a valid contract there must be a subject-matter upon which it can operate. Civil Code (1910), § 4222. It is true that if a contract amounts to an executory agreement for a bona fide sale of property of a character such as under the circumstances and under the law can be legally made the subject-matter of a sale, and is not merely speculative in character, the parties may be bound, although the subject-matter of the sale has no existence at the time the agreement is entered upon, and the seller expects to comply with his contract by subsequently acquiring the property thus agreed to be conveyed. *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199, 201 (37 S. E. 485, 81 Am. St. R. 28) ; *Jones* v. *Fuller,* 27 *Ga. App.* 84 (107 S. E. 544) ; *Gilbert* v. *Copeland,* 22 *Ga. App.* 753 (97 S. E. 251). It will be observed, however, that in order for the principle just stated to have application, there must be no legal inhibition upon the right of the seller to do the thing which he contracts to do; and if at the time the seller contracts to perform he is incapacitated to comply, by reason of the fact that the property which constitutes the subject-matter of the sale can not legally be made the subject-

Contracts, 13 C. J. p. 238, n. 4; p. 330, n. 14.
Corporations, 14 C. J. p. 510, n. 67; p. 656, n. 17.
Evidence, 22 C. J. p. 1152, n. 7.
Sales, 35 Cyc. p. 45, n. 96; p. 46, n. 5; p. 87, n. 41; p. 88, n. 43.

matter of a sale, for which reason delivery can not be enforced against the seller, then, under such circumstances, neither is the purchaser bound by a corresponding obligation on his part, since if both parties are not bound neither is bound. In accordance with the foregoing principle of law, an executory contract by an existing railway corporation for the sale of a portion of an issue to be made of preferred stock, but which it is without legal authority to issue or convey, is void for the lack of a valid consideration moving to the purchaser, and he is not liable on a note given for its purchase, where there has been no subsequent conduct on his part amounting to a ratification of the unauthorized agreement after legal authority for the issuance of such stock has been obtained. It appearing by the allegations of the petition that at the time the alleged contract of purchase and sale was made and the note for the share of such preferred stock was executed, the payee corporation had not only failed to obtain the consent of the governing authorities required by law to approve such issue, but was without charter authority to issue the same, and it not appearing by the petition that after such authority had been obtained the defendant in any way ratified the invalid agreement, the petition failed to set forth a cause of action, and should have been dismissed. It was likewise error to strike that portion of the plea setting up this defense, in which it was alleged that the defendant, upon being told by the plaintiff that it was unable to deliver the stock, repudiated his subscription *Clark* v. *Turner,* 73 *Ga.* 1.

2. The suit is founded upon a written and unconditional promise to pay a certain sum for a described share of preferred stock of the plaintiff company. The plea sets forth that the promoters of the sale of the stock stated to defendant that such unconditional agreement would not be binding unless a certain minimum amount of stock was purchased; and it is alleged in the plea that such minimum amount of bona fide subscriptions was never obtained, in that certain of the subscribers were insolvents, known to be such by the promoters taking the subscriptions, and that the corporation, in the exercise of ordinary diligence, should have been aware of that fact. This case differs from that of *Macon Union Co-op. Asso.* v. *Chance,* 31 *Ga. App.* 636 (3) (122 S. E. 66), and the cases therein cited, in that in those cases such condition was set forth as a part of the subscription contract. In the instant case the promise to pay by the defendant being absolute and unconditional, and the consideration therefor being fully expressed in the writing itself, it is not competent for the defendant to vary by parol the effect of the instrument by setting up a contemporaneous understanding or agreement in conflict therewith, by which the absolute and unconditional promise to pay is made conditional. *Boynton* v. *Twitty,* 53 *Ga.* 214; *Byrd* v. *Marietta Fertilizer Co.,* 127 *Ga.* 30 (56 S. E. 86); *Hirsch* v. *Oliver,* 91 *Ga.* 554 (18 S. E. 354); *Rheney* v. *Anderson,* 22 *Ga. App.* 417, 419 et seq. (96 S. E. 217). Accordingly, that part of the plea setting up such defense should have been stricken on demurrer.

DECIDED JULY 20, 1926.

Complaint; from Lincoln superior court—Judge Park presiding. December 31, 1925.

Application for certiorari was made to the Supreme Court.

*Burnside & McWhorter,* for Parks.

*W. A. Slaton,* contra.

JENKINS, P. J. This was a suit by the Washington & Lincolnton Railroad Company against A. G. Parks, upon a promissory note dated April 8, 1920, maturing December 1, 1920, and containing the following provision: "This note having been given for one share of the preferred stock of the Washington & Lincolnton Railroad Company, it is understood that upon payment of same the said Railroad Company shall deliver to the maker thereof the number of shares of said stock mentioned herein." The petition alleges, in substance, that at the time of the execution of said note there was no preferred stock of the Washington & Lincolnton Railroad Company, and that the charter of said corporation did not at that time authorize the issuance of preferred stock; that on March 4, 1920, by a proper resolution of the stockholders of said corporation it was voted to issue and sell $100,000 of preferred seven per cent. stock of the corporation; that pursuant to such resolution application was made to the Secretary of State for an amendment to the charter of the corporation to authorize the issuance of such stock; that on May 24, 1920, the charter was so amended; that the corporation also applied to the Railroad Commission of Georgia for permission and authority to issue such preferred stock in the amount provided by the resolution of the stockholders, and that on April 15, 1920, this permission and authority was granted by the Railroad Commission; that thereafter, on June 27, 1920, an act of Congress known as the "transportation act of 1920" became effective, and under the provisions of that act petitioner applied to the Interstate Commerce Commission of the United States for permission and authority to issue said preferred stock voted to be issued by the stockholders, and on June 20, 1921, by proper order, the Interstate Commerce Commission authorized the issuance and sale of said preferred stock; and that the corporation had incurred indebtedness on the faith of subscriptions to such stock, and had expended large sums of money in the improvement of its tracks and property. It is set up by way of amendment to the petition, that at the time of filing the suit the corporation was indebted to the persons and corporations furnishing it money and materials for the improvement of its

property, and that it was necessary to collect said stock subscription note in order to pay these debts.

Defendant filed a plea in which he set up by way of affirmative defense, in paragraph 12, that at the time he executed the note sued on it was represented to him by a committee of citizens engaged in selling the stock that the plaintiff was undertaking to sell $100,000 worth of such preferred stock, and that unless that amount was sold it would return defendant's note to him, and the same would be binding only in the event the plaintiff sold said issue of $100,000; that while the plaintiff and said committee obtained subscriptions amounting to $100,000, many of them were from people known by the committee and the plaintiff to be insolvent, or the plaintiff should have known, by the exercise of ordinary diligence, that such subscribers were insolvent; and therefore that he was not liable on the note sued on. The defendant further set up, in paragraph 13 of his answer, that he had been ready and willing to pay said note at its maturity, and went to the plaintiff's collecting agent for the purpose of paying the note and receiving the stock agreed to be purchased, but was notified that said stock had not been issued and could not then be issued, because the plaintiff had not received legal authority to issue it, and that he could only be given a receipt for the payment until such authority was granted; whereupon he notified the plaintiff's agent that if he could not get the stock then he would not take it at all. He further set up, in paragraph 14 of his answer, that the consideration of the note had totally failed, in that there was no preferred stock of the plaintiff corporation in existence at the time of the contract of sale, and plaintiff had no authority to issue the same then or at the time of the maturity of the defendant's note.

The defendant interposed a general demurrer to the plaintiff's petition as amended, which was overruled by the trial judge; to which judgment exception is taken in the main bill of exceptions. The defendant also, by his main bill of exceptions, excepts to the judgment of the court in sustaining the plaintiff's demurrer to paragraphs 13 and 14 of the plea, relating to the invalidity of the note sued on, on account of the plaintiff's admitted incapacity to issue and sell the stock for which it was given, at the time the contract of sale was effected; and setting up that de-

fendant repudiated his contract of purchase upon being informed by the plaintiff, at the time of the maturity of his note, that it was then unable to issue and deliver the stock. By a cross-bill of exceptions the plaintiff excepts to the judgment overruling its demurrer to paragraph 12 of the plea, relating to the alleged insolvency of certain subscriptions obtained by the plaintiff, which the plea alleges were necessary to make up the minimum amount of subscriptions that the committee obtaining them informed the defendant would be obtained before any of them would be binding. Our rulings on the demurrers appear in the syllabus.

Judgment reversed on each bill of exceptions. Stephens and Bell, JJ., concur.