HARRY J. DINGLE, Receiver, et al. *v.* ANDREW SHAAB, et al. Exrs. et al.

[No. 14, April Term, 1941.]

*Decided May 20th, 1941.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, and COLLINS, JJ.

*Walter H. Buck* and *Eugene Frederick* for the appellant.

*C. Ferdinand Sybert, James Clark, Edwin F. A. Morgan,* with whom were *Semmes, Bowen & Semmes* and *Bradley T. J. Mettee, Jr.* for the appellee.

COLLINS, J., delivered the opinion of the Court.

Greenwald, Inc. on July 13th, 1938, executed a note and mortgage to Reconstruction Finance Corporation in the amount of $100,000. John H. Shaab, being a large stock holder in Greenwald, Inc., and two other individuals on the same date executed a guarantee for this note and mortgages. John H. Shaab died on November 20th, 1938 and by his last will and testament admitted to probate by the Orphans' Court for Howard County, made certain bequests to various persons and devised the rest and residue of his estate, real, personal and mixed, unto

his sons, C. Andrew Shaab and Leo H. Shaab. In February 1939, Greenwald, Inc. being in financial difficulty closed its plant. On April 4th, 1939, the Reconstruction Finance Corporation filed the written guarantee of John H. Shaab in the amount of $90,909.32 as a claim against his estate, the amount being determined after giving certain credits on the $100,000 guarantee. C. Andrew Shaab, one of the executors and one of the residuary legatees under the will of his father, in May 1939 started negotiations through Mr. Arthur E. Hungerford, who was familiar with these matters, with the Reconstruction Finance Corporation in an effort to refinance Greenwald, Inc. with the purpose of having the claim of the Reconstruction Finance Corporation cancelled and released against the estate. A plan was tentatively worked out whereby the Reconstruction Finance Corporation, provided certain conditions were carried out, and provided $65,000 was subscribed to new stock, agreed to lend further money to Greenwald, Inc. to refinance, and to release its claim previously filed against the estate of John H. Shaab. On July 12th, 1939, foreclosure procedings were started on the old mortgage by the Reconstruction Finance Corporation against Greenwald, Inc. John Ament on November 17th, 1939, apparently with the consent of the executors filed a creditor's bill in the Circuit Court for Howard County against C. Andrew Shaab and Leo H. Shaab, individually and as executors of the will of John H. Shaab, asking that the real estate of said decedent be sold for the payment of the debts of John H. Shaab, deceased. On the same day and in the same case the two Shaabs, individually and as executors, filed a petition alleging that the aggregate value of the assets of this estate, both real and personal, amounted to between $50,000 and $60,000. They recited in this petition the filing of the claim of the Reconstruction Finance Corporation in the amount of $90,909.32 against the estate. The petition stated that a plan had been worked out whereby the Reconstruction Finance Corporation will advance further sums to Green-

wald, Inc. and will release the estate of John H. Shaab from any liability on his guarantee, provided that estate will purchase $45,000 worth of preferred stock and $100( worth of common stock in the reorganized company known as Greenwald, Inc. They asked in that petition that enough of the assets of the estate be converted into cash to purchase this stock and that it would be to the best interest and advantage of the estate for the Equity Court to assume jurisdiction of the further administration of the estate. They requested that they, as executors, be allowed to come in under the aforementioned reorganization plan to purchase this stock and asked the court to appoint a trustee or trustees to sell or mortgage sufficient of the real and personal property of the estate to produce the sum of $46,000 for the purpose of purchasing this stock. A decree was passed by the Circuit Court for Howard County, dated November 16th, 1939 on this petition, reciting that it would be to the best interest of the estate of John H. Shaab, deceased, to come in under the plan of reorganization of Greenwald, Inc. by purchasing the $46,000 in new stock as prayed, and ordered and decreed that the executors of the will of John H. Shaab be authorized to purchase for the benefit of said estate the aforesaid stock "provided that on the purchase of said stock the guarantee by the said John H. Shaab of the note and mortgage from Greenwald, Inc. to Reconstruction Finance Corporation, mentioned in the petition filed in these proceedings, be fully cancelled and released." The decree ordered that the real estate and personal property of the deceased or so much thereof as may be necessary be sold or mortgaged for the purpose of producing the sum of $46,000, as well as to pay the other debts of John H. Shaab and appointed C. Andrew Shaab and Leo H. Shaab trustees to make said sales or mortgages. The decree made the usual provision for the filing of a bond and provided that the trustees deliver unto C. Andrew Shaab and Leo H. Shaab, executors of the last will and testament of John H. Shaab, the sum of $46,000 out of the

proceeds of said sales or mortgages to be used by said executors for the purchase of 46,000 worth of the capital stock of Greenwald, Inc. as aforesaid.

If this plan had been carried out, instead of the estate of John H. Shaab being consumed in payment of the guarantee to the Reconstruction Finance Corporation, the claim would have been withdrawn and the estate would be the owner of $46,000 worth of stock in the reorganized corporation of Greenwald, Inc. and also of additional stock in exchange for the old common stock held by the deceased. The reorganization plan failed and Harry J. Dingle, receiver for Greenwald, Inc., on May 16th, 1940, filed a claim in the Circuit Court for Howard County against the estate of John H. Shaab, deceased, for $45,710 alleging, "That the said estate is indebted to the affiant as receiver for and on account of a subscription to 450 shares of Class A Preferred Stock, par value $100, of the said Greenwald, Inc., and 710 shares of the common stock of said corporation, par value $1.00, making a total of $45,710, which subscription was made by the authority of an order of court passed by this Honorable Court herein November 16th, 1939, and that no payments have been made on account of said subscription nor has any security been given therefor. That said Greenwald, Inc., is insolvent, and that all of the amounts subscribed for stock as aforesaid by the estate of the said John H. Shaab, deceased, must be collected in order to satisfy the claims of creditors of the said Greenwald, Inc." The Reconstruction Finance Corporation asked leave to intervene and file its answer and exceptions to the petition of Harry J. Dingle, Receiver, and this leave was granted by the court and the answer and exceptions were filed by Reconstruction Finance Corporation. An answer and exceptions to the payment of the claim were filed by the executors of the estate of John H. Shaab alleging that no subscription for any stock of Greenwald, Inc. was ever made by them in pursuance to the order of court of November 16th, 1939; that they "never subscribed for any stock of Green-

wald, Inc., and never entered into any agreement with Greenwald, Inc., or the stockholders thereof, or the creditors thereof, or any of them, for the purchase by your Respondents of any stock of Greenwald, Inc." They further alleged that they "were authorized to purchase such stock for the benefit of said estate only upon the express condition that a certain alleged guaranty by the said John H. Shaab of a certain note and mortgage from Greenwald, Inc., to Reconstruction Finance Corporation be fully cancelled and released; that it does not appear from the petition and claim of said Harry J. Dingle, receiver, that said alleged guaranty by said John H. Shaab has been, will be or can be fully cancelled and released; and that, as a matter of fact, said alleged guaranty never has been cancelled and released," and for other reasons given, asked that the claim be dismissed. The Reconstruction Finance Corporation in their answer and exceptions to the allowance of the claim of Harry J. Dingle, receiver, among other things alleged, "said order of this Honorable Court, dated the 16th, day of November, 1939, authorizing said purchase was based upon the condition precedent that the written guarantee, executed and delivered by the late John H. Shaab in favor of Reconstruction Finance Corporation, guaranteeing payment by Greenwald, Inc. of the promissory note executed by said Greenwald, Inc. in favor of Reconstruction Finance Corporation, in the sum of $100,000, be fully cancelled and released, which said condition precedent was not, and never has been, complied with, since said guarantee is still in full force and effect." After a hearing in open court, the chancellor by his decree and order of October 11th, 1940, dismissed the claim in the amount of $45,710 filed by the appellant in this case and the appeal is taken from that order and decree.

The single question before us is whether this claim of Harry J. Dingle, receiver of Greenwald, Inc., in the amount of $45,710 should have been allowed. C. Andrew Shaab and Leo H. Shaab as executors of the last will and testament of John H. Shaab, could not without having

received authority from the court bind the estate of John H. Shaab for the payment of any debt not incurred by the decedent during his lifetime, and make investments with the funds of the estate. *Flack's Code,* Art. 93, Sec. 5, Art. 16, Sec. 242; *Watkins v. Worthington,* 2 Bland 509, 543; *Simmons v. Tongue,* 3 Bland 341, 359; *Johnson Milling Co. v. Brown,* 173 Md. 366 at page 373; 21 *Am. Jur.,* Sec. 916; *Flack's Code,* Art 93, Sec. 251, Art. 93, Sec. 12; *Seldner v. McCreery,* 75 Md. 287 at page 292; *Oesterla v. Gaither,* 90 Md. 40 at page 45. It is, of course, not contended that this claim was contracted by the decedent during his lifetime. Therefore, the issue narrows to the question: was the claim of Dingle, receiver, contracted under authority of the decree of court passed on November 16th, 1939? There were two distinct provisions in this decree: first, that the new stock of Greenwald, Inc. be purchased from the sale or mortgaging of the real or personal property of the estate of John H. Shaab and second, that "on the purchase of said stock the guarantee of the said John H. Shaab of the note and mortgage from Greenwald, Inc. to Reconstruction Finance Corporation mentioned in the petition filed in these proceedings be fully cancelled and released." Did C. Andrew Shaab and Leo H. Shaab, executors of the last will and testament of John H. Shaab, ever subscribe for the stock in the reorganized Greenwald, Inc.? The appellant relies on the agreement signed by C. Andrew Shaab and Leo H. Shaab, individually and not as executors, with other individuals and not with Greenwald, Inc. on October 2nd, 1939, which was prior to the aforesaid order of court passed on November 16th, 1939 giving them as executors the power, under certain conditions, to do so. This decree did not ratify any subscription to stock previously made by them as individuals. This agreement of October 2nd, 1939 recites in part, "Whereas, C. Andrew Shaab and Leo H. Shaab have subscribed to four hundred and fifty (450) shares of Class A preferred stock and are thereby allotted the right to subscribe to seven hundred and ten shares (710)

of common stock, which they have done * * *." This agreement relates to the common stock owned by John H. Shaab in his lifetime and there is nothing therein to show that any subscription for new stock was made by the Shaabs as executors. It is true that subscriptions to the capital stock of a corporation need not be written and signed. *Wright v. Lewis,* 161 Md. 674 at page 678. However, in examining the record, consisting of over three hundred pages, and the testimony therein, we fail to find that C. Andrew Shaab and Leo H. Shaab as executors of the last will and testament of John H. Shaab, ever subscribed verbally or in writing for the new stock in the reorganized Greenwald, Inc., or agreed to take this stock in the new corporation to be formed.

It is not contended that the guarantee to the Reconstruction Finance Corporation was ever withdrawn as a claim against the estate of John H. Shaab but the contention is made that if the executor of the estate of John H. Shaab had paid the money for the new stock that the reorganization would have been perfected and the claim withdrawn. An examination of the record shows that efforts were made by the executors and by Mr. Arthur E. Hungerford, who was to be an officer in the reorganized corporation, to mortgage and sell the real estate and personal property for the purpose of raising the $46,000 but that these efforts were not successful and, therefore, the executors could not purchase the new stock. Appellant contends that the date for final settlement was set and that if the appellees had produced the money at that time for the new stock that reorganization would have been completed and the claim of the Reconstruction Finance Corporation withdrawn. However. Mr. E. W. Staples, assistant manager of the Richmond Loan Agency of the Reconstruction Finance Corporation testified that no date for final settlement was set because certain papers necessary to be approved by the Reconstruction Finance Corporation had never been prepared and submitted to the Reconstruction Finance Corporation for approval and this approval was necessary before the new loan could be made.

Finally we find that among other things to be done to complete the reorganization, that Articles of Amendment authorizing the new stock were never filed and approved by the State Tax Commission. Article 23, Section 29 (2) provides in part as follows: "When such Articles of Amendment have been delivered to the State Tax Commission with the recording fees, for which provision is hereinbefore made, and the bonus tax, if any payable, the amendment or amendments made thereby shall take effect, and not before." Unless the amendment proceedings are in proper form they are of no effect. *Morgan v. Landstreet,* 109 Md. 585; *Brown v. Md. Telephone Co.,* 101 Md. 581. *Flack's Code,* Art. 23, Sec. 127, provides as follows: "No charter or other paper which is not in conformity to law shall be received by the State Tax Commission for record." This corporation has not been authorized to issue this stock. *Flack's Code,* Art. 23, Sec. 45 (7). Therefore, Greenwald, Inc. has never been in a position to issue the stock the subscription for which constitutes the claim in question, and the stock has never been issued and the claim filed by the receiver of Greenwald, Inc. should not have been allowed. *Fletcher Cyclopedia Corporations,* Vol. 4, Sec. 1418; *Cleveland v. Mullin,* 96 Md. 598; *Grangers' Life and Health Insurance Company v. Kamper,* 73 Ala. 325; *Scoville v. Thayer,* 105 U. S. 143; *Marion Trust Co. v. Bennett,* 169 Ind. 346; *Parks v. Washington & L. R. Co.,* 35 Ga. App. 635.

This claim not having been contracted by John H. Shaab during his lifetime, and not contracted by the executors in accordance with and under the order and decree of court, and Greenwald, Inc. never being in a position to issue the stock, the subscription for which constitutes the claim question, and the stock not having been issued, the chancellor was correct in dismissing the claim.

*Decree Affirmed, with costs.*